IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| DENISE BONNER, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CASE NO. 3:04-CV-01229-WKW |
| | ) | |
| CHAMBERS COUNTY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

This case is before the Court on several motions: Tommy Spradlin and Derrick Burton's Motion to Dismiss (Doc. # 29); ADOC and Commissioner Donal Campbell's Motion to Dismiss (Doc. # 49); Chambers County and Chambers County Commission's Motion to Dismiss (Doc. # 53); Bill Landrum and Lisa Davidson's Motion to Dismiss (Doc. # 55); Chambers County, Chambers County Commission, Mr. Landrum, and Ms. Davidson's Motion for Summary Judgment (Doc. # 51) on Plaintiff Melanie Lovelace's claims; and all Defendants' Motion to Sever (Doc. # 59). For the reasons given below, Spradlin and Burton's Motion to Dismiss and Defendants' Motion to Sever are due to be denied, and the remaining motions to dismiss are due to be granted in part and denied in part.

## I. FACTS AND PROCEDURAL HISTORY

Plaintiffs instituted this action on December 22, 2004. The plaintiffs are Denise Bonner, Jamie Davis, Chasity Brewer, April Mann, Melanie Lovelace, Chandra Parker, and Jean Brooks. As inmates at the Chambers County Jail ("Jail"), these seven female Plaintiffs allege they suffered at the hands of jail officials and other inmates a series of sexual assaults, rapes, and extortions, and

a conspiracy to conceal these offenses by and through the defendants.  The complaint was amended twice, and Officers Belladaro, Davis, Gore, and Tucker were dismissed as defendants.  The current defendants are Tommy Spradlin, Derek Burton, and Lisa Davidson, individual officers[1] at the Jail; Bill Landrum, the Jail Administrator; Chambers County; Chambers County Commission;  Alabama Department of Corrections ("ADOC"); and Donal Campbell, Commissioner of the ADOC.  The Second Amended Complaint alleges the following claims:  § 1983 claim for deprivations of rights under the Eighth and Fourteenth Amendments against all Defendants; § 1985 claim for conspiracy to interfere with civil rights against Mr. Landrum, Mr. Spradlin, Mr. Burton, and Ms. Davidson; § 1986 claim for failure to prevent the interference with civil rights against all Defendants;  state tort claims of invasion of privacy, assault and battery, and outrage against Mr. Campbell, Mr. Landrum, Mr. Spradlin, Mr. Burton, and Ms. Davidson; and state law tort claims of negligent training, retention, and supervision claims against Mr. Campbell and Mr. Landrum.   Plaintiffs seek declaratory and injunctive relief, compensatory and punitive damages, and costs and fees.

The Court must take as true all allegations in the Second Amended Complaint.  Further recitation of the allegations is unnecessary for a resolution of the pending motions.  Factual allegations will be referenced where appropriate in the discussion.

## II.  JURISDICTION AND VENUE

The Court exercises subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343 (civil rights).  The parties do not contest personal jurisdiction or venue, and the court finds adequate allegations in support of both.

---

[1]  The Court assumes that the "officers" referred to in the complaint are employees at the Jail.  In this memorandum, the Court uses "officer" and "guard" interchangeably.

### III.  DISCUSSION OF MOTIONS TO DISMISS

The four pending motions to dismiss[2] present somewhat overlapping arguments:

(1)  ADOC and Mr. Campbell did not have actual notice of a specific risk of attack, so failure to protect claims must fail;

(2)  ADOC, Mr. Campbell, Chambers County, and Chambers County Commission have no authority over the Jail;

(3)  ADOC, Mr. Campbell, Chambers County, and Chambers County Commission cannot be held liable on a theory of *respondeat superior*;

(4)  Chambers County, Chambers County Commission, Mr. Landrum, and Ms. Davidson contend that the plaintiffs have no standing for injunctive relief;

(5)  Chambers County and Chambers County Commission are immune from punitive damages;

(6)  ADOC, Mr. Campbell, Mr. Landrum, and Ms. Davidson have Eleventh Amendment, state constitutional, or qualified immunity, or, in the alternative, Mr. Landrum and Ms. Davidson contend that a more definite statement of the factual allegations is necessary to determine their qualified immunity;

(7)  Mr. Landrum and Ms. Davidson contend that state law violations do not state a constitutional violation for § 1983 purposes; and

(8)  Mr. Landrum and Ms. Davidson contend that Plaintiff Mann's claims must be dismissed pursuant to the Prisoner Litigation Reform Act.

---

[2]  Spradlin and Burton move to dismiss claims against them in their official capacities (Doc. # 29). Because the plaintiffs have amended the complaint since this motion was filed, eliminating any such claims, the Court will deny the motion to dismiss as moot.

3

The Court addresses each of these arguments in turn.

### A.   *Motion to Dismiss Standard*

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the complaint.  "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Day v. Taylor*, 400 F.3d 1272, 1275 (11th Cir. 2005).  The Court must accept all factual allegations as true and view them in a light most favorable to the plaintiff.  *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).  The threshold is "exceedingly low" for a complaint to survive a motion to dismiss for failure to state a claim.  *Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 703 (11th Cir. 1985).

### B.   *Section 1983*

Section 1983 provides judicial remedies to a claimant who can prove that a person acting under color of state law committed an act that deprived the claimant of some right, privilege, or immunity protected by the Constitution or laws of the United States.  42 U.S.C. § 1983.  Plaintiffs allege, under several theories, that the defendants' conduct deprived them of their constitutional rights under the Eighth and Fourteenth Amendments.

In its prohibition of cruel and unusual punishments, the Eighth Amendment prohibits prison officials from using excessive physical force against prisoners and imposes on prison officials the duty to provide humane conditions of confinement.  *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).  When officials are accused of using excessive physical force, an Eighth Amendment claimant must show that officials applied the force "maliciously and sadistically for the very purpose of causing harm."  *Id.* at 835 (quoting *Hudson v. McMillian*, 503 U.S. 1, 6 (1992)).  When officials are accused

of failing to protect prisoners from violence, including sexual violence, inflicted by other prisoners in violation of the Eighth Amendment, the claimant must show that the deprivation is, objectively, sufficiently serious and that the prison official has a sufficiently culpable state of mind, i.e., he or she acted with deliberate indifference.[3]  *See id.* at 834.

### 1.        Specific Knowledge

The ADOC and Mr. Campbell argue that they did not have "any specific knowledge" of a risk of attack, so the plaintiffs' failure to protect claims must fail.  Knowledge, however, presents a factual question not be resolved on a motion to dismiss.  *See id.* at 841 ("Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence . . . and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.").  Plaintiffs have alleged that ADOC and Mr. Campbell had knowledge of the risk.  The Court must accept such allegations as true; therefore, the motion to dismiss fails on this argument.

### 2.        Authority Over Chambers County Jail

The defendants, Mr. Campbell in his official capacity,[4] Chambers County, and Chambers County Commission, may be held liable for § 1983 claims under the theory of governmental liability.

---

[3]  The Supreme Court expounded on the concept of deliberate indifference:

We hold . . . that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer*, 511 U.S. at 837.

[4]  A State's liability is severely limited by the Eleventh Amendment.  See discussion in section III.B.6.

*See Monell v. Dept. of Social Servs.*, 436 U.S. 658 (1978).  Mr. Campbell in his individual capacity may be held liable for § 1983 claims under the theory of supervisory liability.  *Rizzo v. Goode*, 423 U.S. 362, 371 (1976).   Defendants ADOC, Mr. Campbell, Chambers County, and Chambers County Commission argue, however, that they have no authority over the Jail and thus cannot be held liable for § 1983 claims arising from events in the Jail.

The ADOC "oversees the county jails and has the authority to regulate them." *See Turquitt v. Jefferson County, Ala.*, 137 F.3d 1285, 1289 (11th Cir. 1998).  Alabama law requires the ADOC to periodically inspect county jails to aid in securing just, humane, and economic management, provide detailed reports to the Governor, and promulgate necessary rules for management and security purposes. *Id.*; Ala. Code §§ 14-1-8(a)(3), 14-6-81 (1975).  Where, as here, it is alleged that a breach of the ADOC's duty to inspect and aid in the provision of just, humane, and economic management of county jails caused inmates to be harmed, *see, e.g.,* 2d Am. Compl. ¶¶ 23, 114, this Court cannot say as a matter of law that the ADOC, through the Commissioner, cannot be held liable under § 1983.  The motion to dismiss is due to be denied as to Mr. Campbell's argument that, in his official capacity as the Commissioner of the ADOC, he bears no responsibility for the events alleged in the Second Amended Complaint.

"Alabama counties possess some duties with respect to county jails," *Turquitt*, 137 F.3d at 1289, but counties have no authority to supervise inmates or operate jails:

> The duties of the counties with respect to the jails 'are limited to funding the operation of the jail and to providing facilities to house the jail.' *Stark v. Madison County,* 678 So.2d 787, 787 (Ala.Civ.App.1996).  The county commission is charged with erecting and maintaining jails, and each county is required to maintain a jail of sufficient size and strength to secure the prisoners. Ala.Code §§ 11-14-10, 11-14-13 (1989).

*Id.* at 1289-90; *see also Marsh v. Butler County, Ala.*, 268 F.3d 1014, 1027 (11th Cir. 2001).

Plaintiffs allege that the "general prison conditions and physical layout inside the jail allowed male and female inmates to interact" leading to the attacks on female inmates. Although the county is not responsible for general prison conditions, *Turquitt*, 137 F.3d at 1289, the county is responsible for the Jail's physical structure. *See* Ala. Code § 11-14-13 (contemplating the design of jail facilities with respect to men and women). Accordingly, at this stage in the litigation, the Court cannot say as a matter of law that Chambers County or its Commission cannot be held liable under § 1983.

### 3.    *Respondeat Superior*

Defendants further argue they cannot be held liable on a theory of *respondeat superior*. It is true that the theory of *respondeat superior* to establish governmental or supervisor liability is unavailable under § 1983. *Monell*, 436 U.S. at 691-2, 694 n.58. Therefore, to the extent the § 1983 claims are based on vicarious liability, they are due to be dismissed.

However, the claims alleged against Chambers County and Chambers County Commission are not based on *respondeat superior* but rather on the theory of governmental liability.

Likewise, contrary to Mr. Campbell's argument, the failure to supervise claim against him in his individual capacity is not based on *respondeat superior*. "Supervisory liability under section 1983 may be shown by either the supervisor's personal participation in the acts that comprise the constitutional violation or the existence of a causal connection linking the supervisor's actions with the violation." *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988). Plaintiffs do not allege Mr. Campbell's personal participation in the sexual abuse, but rather they allege that he had a state law duty to inspect and to aid in the provision of just, humane, and economic management of county jails and that he had knowledge of the widespread sexual abuse of inmates. Although thin, these

allegations are sufficient to survive the motion to dismiss. *See Clark v. Evans*, 840 F.2d 876, 885 (11th Cir. 1988) ("The causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so.").

### 4. Standing for Injunctive Relief

Chambers County, Chambers County Commission, Mr. Landrum, and Ms. Davidson argue that the plaintiffs have no standing for injunctive relief. The defendants do not challenge standing for any particular plaintiff for relief against any particular defendant, nor do they challenge standing for any other relief.

A plaintiff seeking injunctive or declaratory relief must show a sufficient likelihood of future harm. *See City of Los Angeles v. Lyons*, 461 U.S. 95 (1983). However, the Supreme Court has implicitly recognized that prisoners have standing for injunctive relief where they allege a contemporary violation that is likely to continue. *Farmer*, 511 U.S. at 845-46. In connection with an alleged failure of prison officials to prevent harm from being inflicted upon prisoners, prisoner plaintiffs may bring an action seeking injunctive relief based on a claim that officials are knowingly and unreasonably disregarding an objectively intolerable risk of harm and will continue to do so. *Id.* If the Eighth Amendment's subjective and objective requirements are satisfied, a court may grant appropriate injunctive relief; however, issuance of injunctive orders should be approached with caution. *Id.* at 846-47.

8

In light of the allegations that at least one named Plaintiff is still incarcerated[5] and that the defendants' violative conduct has continued even after this lawsuit was filed and is likely to continue, the motion to dismiss is due to be denied.  The gravity and extent of alleged constitutional violations at the Jail, if proven to still exist, will require this Court to examine fully the Jail environment and, as appropriate, to apply its full equitable powers to obtain correction of constitutional deficiencies and to ensure future compliance with basic constitutional requirements.

**5.**    **Punitive Damages**

Chambers County and Chambers County Commission argue that they are immune from punitive damages under § 1983, *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981), or under state law.  *Harrelson v. Elmore County, Ala.*, 859 F. Supp. 1465, 1469 (M.D. Ala. 1994).  Plaintiffs do not reply to this argument.  The motion to dismiss as to punitive damages against these two defendants is due to be granted.

**6.**    **Immunities**

The ADOC, Mr. Campbell, Mr. Landrum, and Ms. Davidson argue that they are entitled to various types of immunity.  In the alternative, Mr. Landrum, and Ms. Davidson move for a more definite statement of the factual allegations as is necessary to determine the applicability of qualified immunity.

**a.**    ***Eleventh Amendment***

---

[5]  The caption of this case states that the plaintiffs include "all others similarly situated."  Because the parties do not address the doctrines of mootness or wrongs capable of repetition yet evading review, the Court declines to further analyze justiciability at this time.

Absent abrogation or waiver of immunity, the Eleventh Amendment[6] absolutely bars suits by individuals against state governments in federal court.  *See Edelman v. Jordan*, 415 U.S. 651 (1974); *see also Quern v. Jordan*, 440 U.S. 332 (1979) (holding that § 1983 is not congressional abrogation of state immunity ); *Williams v. Bennett*, 689 F.2d 1370, 1377-78 (11th Cir. 1982) (finding that Alabama has not waived its immunity from suit).  The ADOC is an agency of Alabama state government for Eleventh Amendment purposes, regardless of the type of relief sought. *Alabama v. Pugh*, 438 U.S. 781, 782 (1978).  Alabama jailers are state officials entitled to Eleventh Amendment immunity.  *Lancaster v. Monroe County, Ala.*, 116 F.3d 1419, 1429 (11th Cir. 1997). However, the Eleventh Amendment does not prohibit suits against state employees sued in their individual capacity for money damages or sued in their official capacity for prospective equitable relief.  *See Ex parte Young*, 209 U.S. 123 (1908) (holding that a plaintiff seeking prospective relief from the state must name as a defendant a state official rather than the state or a state agency directly even though in reality the suit is against the state).

Eleventh Amendment sovereign immunity may not apply to bar relief under § 1983 when a state official is sued for prospective injunctive relief to "end a continuing violation of federal law." *See Seminole Tribe of Florida,* 517 U.S. 44, 73 (1996).  Although "neither a State nor its official acting in their official capacities are 'persons' under § 1983," *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989), a state official sued for prospective injunctive relief in his or her official

---

[6] The Eleventh Amendment provides that:

The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI.

capacity is a person under § 1983, *see id.* at 71 n.10, as are state officials sued in their individual capacities. *See Hafer v. Melo*, 502 U.S. 21, 31 (1991).

Therefore, the § 1983 claim against the ADOC is due to be dismissed. The § 1983 claims against Mr. Campbell and Mr. Landrum in their official capacities for prospective injunctive relief may be maintained. The § 1983 claims against Mr. Campbell, Mr. Landrum, and Ms. Davidson in their individual capacities for all relief may also be maintained.

To the extent the complaint alleges state law claims against Mr. Campbell, Mr. Landrum, and Ms. Davidson in their official capacities, those claims must be dismissed. *See Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89 (1984) (holding Eleventh Amendment bars federal courts from enjoining state officers from violating state law).

### b. *State Constitutional Immunity*

State law claims against Mr. Campbell, Mr. Landrum, and Ms. Davidson in their individual capacities are due to be dismissed under state constitutional immunity. *See McMillian v. Johnson*, 101 F.3d 1363, 1365 (11th Cir. 1996) (relying on *Tinney v. Shores*, 77 F.3d 378 (11th Cir. 1996) (finding state agents are immune from suit for all state law claims, even when sued in their individual capacity)); *Lancaster*, 116 F.3d at 1439.

### c. *Qualified Immunity*

In response to the § 1983 claims against them in their individual capacities, Mr. Campbell, Mr. Landrum, and Ms. Davidson assert that they are entitled to qualified immunity. Mr. Campbell's qualified immunity argument as to the § 1983 claim is conclusory and thus unpersuasive. This is not to say that the Court will not revisit the existence of qualified immunity if a proper legal analysis is presented at the summary judgment stage.

11

Mr. Landrum and Ms. Davidson assert that the Second Amended Complaint is deficient with respect to factual allegations.  Indeed, they contend that the "lack of specific factual allegations makes any comparison to clearly established law an impossibility." (Defs.' Br. 6.)  They conclude that the plaintiffs have not alleged that the defendants violated a constitutional right and that such right was clearly established.  Therefore, according to Mr. Landrum and Ms. Davidson, they are entitled to qualified immunity.

"Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  While qualified immunity is typically addressed at the summary judgment stage, the defense may be raised and considered on a motion to dismiss.  *See Marsh*, 268 F.3d at 1030; *see also St. George v. Pinellas County*, 285 F.3d 1334, 1337 (11th Cir. 2002); *Chesser v. Sparks*, 248 F.3d 1117, 1121 (11th Cir. 2001).

"To be even potentially eligible for qualified immunity, the official has the burden of establishing that he was acting 'within the scope of his discretionary authority.'" *O'Rourke v. Hayes*, 378 F.3d 1201, 1205 (11th Cir. 2004) (quoting *Hartsfield v. Lemacks*, 50 F.3d 950, 953 (11th Cir. 1995)).  Defendants must show, for each act in question, that they were performing a legitimate job-related function through means that were within their power to utilize. *Id.*  "If the defendants were not acting within their discretionary authority, they are ineligible for the benefit of qualified immunity." *Lumley v. City of Dade City*, 327 F.3d 1186, 1194 (11th Cir. 2003); *see Barker v.*

*Norman*, 651 F.2d 1107, 1121 n.18 (5th Cir. 1981)[7] (noting that "an official's actions may be so far removed from the ordinary course of his duties, so outside even his discretionary authority to act, that the official cannot establish his entitlement to claim immunity in the first instance").

In an attempt to carry their burden, Mr. Landrum and Ms. Davidson assert that they:

> . . . easily clear the 'low hurdle' of demonstrating that any dealings they had with the jail were within their discretionary authority. Paragraph 5 of the Second Amended Complaint describes Landrum as the county jail administrator. Paragraph 13 describes Davidson as a jail officer. Apparently, Plaintiffs do not dispute that Landrum and Davidson's relationship with this case arises from their authority as jail officers.

(Defs.' Br. 4.) Apparently, Defendants have confused the concept of discretionary authority in the context of a qualified immunity analysis with § 1983's "under color of state law" requirement. Beyond question, as jailers, Mr. Landrum and Ms. Davidson were acting under color of state law. What is uncertain, however, is whether – by allegedly allowing inmates into the plaintiff's cell to physically and sexually assault her and then transfer inmates to another facility to cover up the incident, for example – they were performing legitimate job-related functions through means that were within their power to utilize.[8] Because Defendants fail to carry their burden, the Court need not continue with the qualified immunity analysis. As stated with respect to Mr. Campbell's qualified immunity argument, the Court will revisit the existence of qualified immunity if a proper legal analysis supported by undisputed facts is presented at the summary judgment stage.[9]

---

[7] The Eleventh Circuit has adopted all prior decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981, as binding precedent. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

[8] Suffice it to say that the allegations, if true, bring the "so far removed" standard of *Barker* into sharp focus.

[9] Each defendant should address each alleged act in question on a per plaintiff per claim basis. A conclusory claim to the privilege in one instance is not only insufficient, but it also may not translate to another

7.      **State Law Violations**

Mr. Landrum and Ms. Davidson argue that state law violations (*i.e.*, the nine Alabama statutes governing jail operations as alleged in ¶ 136) do not state a constitutional violation for § 1983 purposes.  The Court agrees but notes that the Second Amended Complaint is not at all lacking in allegations sufficient for Plaintiffs to pursue § 1983 claims for deprivations of federal constitutional rights.

8.      **Prison Litigation Reform Act**

Mr. Landrum and Ms. Davidson argue that Plaintiff Mann's failure to comply with the Prisoner Litigation Reform Act ("PLRA") requires her claims to be dismissed.  They assert that she was incarcerated at the time the suit was brought and, thus, was first required to exhaust her administrative remedies.

The PLRA states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  Plaintiff Mann alleges that while incarcerated at the Jail, some officers "came into her cell without her consent and felt inappropriate parts of her body and looked at her body" and "[o]ne of the officers told her that if she would allow them to have sex with her they would give her special favors." (2d Am. Compl. ¶¶ 50-51.)  She further alleges that she "is  no longer incarcerated in Chambers County Jail." (*Id*. ¶ 54.)  She does not specify the date of her release.

In analyzing a similar provision of the PLRA, the Eleventh Circuit determined that the section was applicable to prisoners who were confined at the time the action was filed but who are

---

instance.  See the Court's Order dated June 13, 2006 (Doc. # 95).

no longer prisoners.  *See Harris v. Garner*, 216 F.3d 970, 973-74 (11th Cir. 2000) (en banc) (analyzing § 1997e(e)); *see also Miller v. Tanner*, 196 F.3d 1190, 1193-94 (11th Cir. 1999).  The court explained that the claims  that were not in compliance with the PLRA  should be dismissed without prejudice so the plaintiff could re-file.  *Harris*, 216 F.3d at 980.  The deficient complaint could not be cured with an amendment.  *Id.* at 982-83.  Undoubtedly, the Eleventh Circuit would apply the same rationale to § 1997e(a).  Thus, if the defendants' factual assertions as to her inmate status and the availability of administrative procedures are correct, this Court does not have the discretion to allow the amendment to cure the deficient complaint.  Ms. Mann's claims ought to be dismissed without prejudice with leave to re-file.  This Court would then be amenable to granting a motion to consolidate.  Notably, such procedures – as are required by the Eleventh Circuit majority's interpretation of § 1997e – would not only be time-consuming, but they would also necessarily cause this Court to extend the established deadlines already set in this case.

Notwithstanding the law's clear mandate, the Court cannot say as a matter of law that Ms. Mann's claims must be dismissed at the motion to dismiss stage, especially where plaintiffs cannot state the date of Ms. Mann's release.  It cannot be determined, then, whether Ms. Mann is in violation of the PLRA or whether she is simply a former prisoner, to which the exhaustion requirement would not be applicable.  *See Greig v. Gord*, 169 F.3d 165, 167 (2d Cir. 1999) (holding that litigants "who file prison conditions actions after release from confinement are no longer 'prisoners' for purposes of § 1997e(a) and, therefore, need not satisfy the exhaustion requirements of this provision").  When the material fact of Ms. Mann's release date is not in dispute, the Court will make the determination under the PLRA.  If they so desire, the defendants should present their argument again at the summary judgment stage.

## IV.  **DISCUSSION OF MOTION FOR SUMMARY JUDGMENT (Doc. # 51)**

### A.    *Standard*

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id*. at 323.  The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the non-moving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  *Id*. at 322-23.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id*. at 324.  To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986).  On the other hand, a court ruling on a motion for summary judgment must believe the evidence of the non-movant and must draw all justifiable inferences from the evidence in the non-moving party's favor. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255 (1986).  After the nonmoving party has responded to the motion for summary judgment, the court

must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).

**B.      *Statute of Limitations***

Defendants Chambers County, Chambers County Commission, Mr. Landrum, and Ms. Davidson move for summary judgment on Plaintiff Melanie Lovelace's claims.  They assert that these claims are barred by Alabama's two year statute of limitations for section 1983 claims.  Having filed this action on December 22, 2004, Ms. Lovelace's claims would have had to accrue within two years of this date, i.e., December 22, 2002, to be viable.  In support of their motion, they submit the affidavit of Mr. Landrum and Inmate History Reports on Ms. Lovelace, which show that Ms. Lovelace's last date of incarceration in the Jail was December 2, 2002.  The defendants argue that any cause of action that Ms. Lovelace may have would have accrued no later than December 2, 2002.

Ms. Lovelace does not dispute that a two year statute of limitations applies to her § 1983 claims.  Nor does Ms. Lovelace submit any affidavits or documentation to refute the defendants' argument as required by Rule 56.  Rather, she argues that the accrual date for her cause of action should be tolled, or the defendants should be equitably estopped from defending on the basis of the statute of limitations, because Defendant Landrum hindered her attempts to file a grievance regarding the sexual abuse inside the Jail with outside attorneys while she was incarcerated.  She also argues that injuries from her sexual abuse have been repressed.

A two year statute of limitations applies to § 1983 claims brought in Alabama courts.  *See Jones v. Preuit & Mauldin*, 876 F.2d 1480, 1483 (11th Cir. 1989) (*Jones II*) (recognizing that, after *Owens v. Okure*, 488 U.S. 235 (1989), the two year limitations period of Ala. Code § 6-2-38(l) applies to § 1983 actions brought in an Alabama forum).  Federal law determines when a § 1983

17

claim accrues.  *Mullinax v. McElhenney*, 817 F.2d 711, 716 (11th Cir. 1987).  The § 1983 claim accrues when the plaintiff knows or has reason to know that she has been injured and is aware of should have been aware of who or what has inflicted the injury.  *Id.*

Ms. Lovelace alleged that upon her attempt to report the illegal drug distribution and sexual abuse to authorities outside the Jail, she was illegally held in isolation for four months after she was subjected to additional sexual and physical attacks and threats.  Assuming without deciding that these events tolled the running of the statute of limitations, the clock began to run on these claims when she was free from the Jail.  The facts giving rise to Ms. Lovelace's claims were known to her no later than December 2, 2002, and her knowledge is not affected by the fact that she continues to suffer from the abuse inflicted upon her by the defendants.  Other than bare statements, she does not proffer support for her argument on estoppel beyond this date.  Accordingly, Ms. Lovelace's claims under § 1983 claim accrued on or before December 2, 2002, and are barred by the two year statute of limitations.

For these reasons, the motion for summary judgment is due to be granted with respect to Ms. Lovelace's § 1983 claims.

## V.  <u>DISCUSSION OF MOTION TO SEVER (Doc. # 59)</u>

The Court construes the defendants' motion to sever as a motion for separate trials.  Federal Rule of Civil Procedure 42(b) permits a court "in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy" to order a separate trial of any claim.

Joinder of the remaining claims and parties is proper under Rule 20 because there are some common questions of law and fact.  Although permissible under Rule 42(b) despite proper joinder,

separate trials would not further convenience, expedition, or economy for either the Court or the parties.  The defendants allege but do not demonstrate prejudice.  Nor do defendants explain which claims should be severed to avoid the alleged prejudice.  The defendants fail to demonstrate good cause; thus, the motion to sever  is due to be denied.

## VI.  <u>CONCLUSION</u>

For the reasons set forth above, it is ORDERED that:

1.    Spradlin and Burton's Motion to Dismiss (Doc. # 29) is DENIED as MOOT.

2.    ADOC and Campbell's Motion to Dismiss (Doc. # 49) is GRANTED in part and DENIED in part;

    a.    it is GRANTED with respect to the immunity arguments; thus,

        i.    ADOC is DISMISSED from the suit;

        ii.    § 1983 claims for damages against Donal Campbell, in his official capacity as the Commissioner of the ADOC, are DISMISSED;

        iii.    State law claims for all relief against Donal Campbell, in both is individual and official capacities, are DISMISSED;

    b.    it is GRANTED with respect to *respondeat superior* generally (but the claims as stated are not based on *respondeat superior*); and

    c.    it is DENIED in all other respects.

3.    Chambers County and Chambers County Commission's Motion to Dismiss (Doc. # 53) is GRANTED in part and DENIED in part;

    a.     it is GRANTED with respect to punitive damages; thus, the § 1983 claims for punitive damages against Chambers County and Chambers County Commission are DISMISSED;

    b.     it is GRANTED with respect to *respondeat superior* generally (but the claims as stated are not based on *respondeat superior*); and

    c.     it is DENIED in all other respects.

4.    Landrum and Davidson's Motion to Dismiss (Doc. # 55) is GRANTED in part and DENIED in part;

    a.     it is GRANTED with respect to immunity arguments; thus,

        i.     § 1983 claims for damages against Bill Landrum, in his official capacity as the Jail Administrator of the Chambers County Jail, are DISMISSED;

        ii.     State law claims for all relief against Bill Landrum, in both his individual and official capacities, are DISMISSED;

        iii.     State law claims for all relief against Lisa Davidson are DISMISSED;

    b.     it is GRANTED with respect to the argument that state law violations do not state a constitutional violation for § 1983 purposes; and

    c.     it, including the alternative motion for a more definite statement, is DENIED in all other respects.

5.    Chambers County, Chambers County Commission, Mr. Landrum, and Ms. Davidson's Motion for Summary Judgment (Doc. # 51) is GRANTED; thus, Plaintiff Lovelace's § 1983 claims are DISMISSED with prejudice.

6.      The defendants' joint Motion to Sever (Doc. # 59) is DENIED.

DONE this the 19th day of June, 2006.


                      /s/   W.  Keith Watkins
                    UNITED STATES DISTRICT JUDGE