IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| DENISE BONNER, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | CASE NO. 3:04-CV-01229-WKW |
| ) | |
| CHAMBERS COUNTY, et al., ) | |
| ) | |
| Defendants. ) | |

### MEMORANDUM OPINION AND ORDER

This case is before the court on the Motion for Summary Judgment (Doc. # 106) filed by Defendant Commissioner of the Alabama Department of Corrections and the Motion for Summary Judgment (Doc. # 114) filed by Defendants Chambers County and Chambers County Commission. For the reasons set forth below, the motions will be granted.

### I.  FACTS AND PROCEDURAL HISTORY

The plaintiffs are Denise Bonner, Jamie Davis, Chasity Brewer, April Mann, Melanie Lovelace,[1] Chandra Parker, and Jean Brooks. As inmates at the Chambers County Jail ("Jail"), these female Plaintiffs allege they suffered at the hands of jail officials and other inmates a series of sexual assaults, rapes, and extortions, and a conspiracy to conceal these offenses by and through the defendants. The current defendants are Tommy Spradlin, Derek Burton, and Lisa Davidson,

---

[1] In its June 19, 2006 Opinion and Order, the court granted the defendants' motions to dismiss Melanie Lovelace's § 1983 claim because it was filed outside of the statute of limitations. The defendants did not make the same argument regarding Ms. Lovelace's other claims, yet the parties have acted as if the order disposed of all her claims. The court notes that the two year limitation period also applies to Ms. Lovelace's § 1985 claim, *see Trawinski v. United Tech.*, 313 F.3d 1295, 1298-99 (11th Cir. 2002), and state law claims. *See* Ala. Code § 6-2-38(l) (1975); *Continental Cas. Ins. Co. v. McDonald*, 567 So. 2d 1208, 1215 (Ala. 1990) (outrage); *Shufford v. Integon Indem. Corp.*, 73 F. Supp. 2d 1293, 1300-01 (M.D.Ala. 1999) (invasion of privacy); *Booker v. United American Ins. Co.*, 700 So. 2d 1333, 1339 (Ala. 1997) (negligence-type claims). Her claim under § 1986 is subject to the statute's one year limitation period. 42 U.S.C. § 1986. Accordingly, all of Ms. Lovelace's claims will be dismissed with prejudice.

individual officers[2] at the Jail; Bill Landrum, the Jail Administrator; Chambers County and Chambers County Commission (collectively referred to as the "County");  and the Commissioner of the Alabama Department of Corrections ("ADOC Commissioner").

The Court reiterates the relevant facts contained in the parties' evidentiary submissions.[3] Donal Campbell was appointed the ADOC Commissioner on January 26, 2003.  (Doc. # 107-3, Campbell Dep. 9:3-6.)  He served in this capacity until February 2006.[4]  (Doc. # 107-4, Campbell Aff.)  The ADOC Commissioner has general supervisory and policy making authority over the ADOC, (Doc. # 107-3, Campbell Dep. 11:12-16), which in turn is responsible for performing inspections of Alabama's county jails.  Seven jail inspection reports reflect that inspections of the Jail were conducted by the ADOC on January 24, 2000, October 5, 2000, March 14, 2001, October 29, 2001, May 20, 2002, October 22, 2003, and October 20, 2005.  (Doc. # 107-2, Reports.)  The ADOC Commissioner's testimony reflected that he does not review the inspection reports, he does not know what happens to the reports after they are made, and he does not even know why the

---

[2]  The Court assumes that the "officers" referred to in the complaint are employees at the Jail.  In this memorandum, the Court uses "officer" and "guard" interchangeably.

[3]  Defendant ADOC Commissioner represents that "[t]here are no conflicts between the Plaintiffs' testimony and the evidence of Defendant [ADOC Commissioner] who accepts the testimony of the Plaintiffs as truthful for the purposes of this motion."  (Doc. # 107, Comms'r Br. 3.)  In response, the plaintiffs "adopt and reincorporate by reference the Statement of Facts as set out more fully in Plaintiffs' Response to Defendant Landrum's Motion for Summary Judgment."  (Doc. # 141, Pls.' Resp. 1.)  Similarly, for the purpose of responding to the County's summary judgment motion, the plaintiffs adopt and incorporate the same statement of facts. (Doc. # 137, Pls. Resp. 3.)  The court refers the reader to said statement of facts as recitation of those facts is unnecessary for the purposes of this opinion.

[4]  This suit is filed against the ADOC Commissioner in his official and individual capacity.  In light of the fact that Donal Campbell is no longer the ADOC Commissioner, substitution of parties is proper under Rule 25(d) of the Federal Rules of Civil Procedure.  However, Donal Campbell was the ADOC Commissioner during most of the relevant time period and the court credits his testimony as the testimony of the ADOC Commissioner.

ADOC has authority to inspect county jails. (Doc. # 143, Campbell Dep. 16:15-21, 18:7-9, 13:21-14:7.)

The County appointed Patrick Simms as the County Administrator in January 2001. (Doc. # 115, Ex. A, Simms Dep. 8:4-6.) As County Administrator, one of his duties is budgeting for the County. (*Id*. 8:15-37:7.) With respect to the Jail, the County's responsibilities extend to "cut[ting] a check" to the jail employees and funding, building, and maintaining the "physical plant" of the Jail. (*Id*. 24:18-28:3.) The Jail was built in 1991, (Doc. # 115, Ex. C, Landrum Decl. ¶ 14), upon design recommendations by architects, engineers, and consultants. (Doc. # 115, Ex. B, Simms Decl. ¶3.) Patrick Simms reported that the County has nor received any notice or information that there are flaws in the Jail's design. (*Id*. ¶ 4.)

The Jail is designed with a central control room that is located at the front of the jail. (Doc. # 115, Ex. C, Landrum Decl. ¶ 14.) The room, which is manned continuously, contains monitors showing images from numerous surveillance cameras placed strategically throughout the jail and outside in the sallyport. (*Id*.) Down two hallways from the central control room is the pod area housing general population inmates in eight cell blocks. (*Id*.) From the control pod in the center of the pod area, an officer can monitor most activities in the seven male cell blocks. (*Id*.) The one female cell block has a separate monitoring area designed to ensure that male inmates cannot look directly into the female cell block. (*Id*.) The female cell block is designed to separate the female inmates from the male inmates by sight and sound. (*Id*.) The female cell block only houses female inmates; the male cell block houses only male inmates. (*Id*.)

Plaintiffs instituted this action on December 22, 2004. After resolution of various motions to dismiss, the following claims remain against the ADOC Commissioner: (1) claims for prospective injunctive relief under § 1983 alleging deprivations of rights under the Eighth and

Fourteenth Amendments; and (2) a claim for prospective injunctive relief under § 1986 for failure to prevent civil rights violations. The claims that remain against the County are: (1) claims under § 1983 alleging deprivations of rights under the Eighth and Fourteenth Amendments; and (2) a claim under § 1986 for failure to prevent civil rights violations.

## II.  JURISDICTION AND VENUE

The Court exercises subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343 (civil rights). The parties do not contest personal jurisdiction or venue, and the court finds adequate allegations in support of both.

## III.  STANDARD OF REVIEW

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id*. at 323. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the non-moving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id*. at 322-23.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories,

4

and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id*. at 324. To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). On the other hand, a court ruling on a motion for summary judgment must believe the evidence of the non-movant and must draw all justifiable inferences from the evidence in the non-moving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

## IV. DISCUSSION

### A.   *ADOC Commissioner*

#### 1.   Section 1983

In its opinion resolving the motions to dismiss in this case, the court ruled that § 1983 claims may be maintained against the ADOC Commissioner in his official capacity under the theory of governmental liability[5] and in his individual capacity under the theory of supervisory liability. The defense argues on summary judgment that there is no proof to support a finding of liability against the ADOC Commissioner: "Campbell had no information or knowledge from any source that the safety and security of the inmates in the Chambers County jail was threatened." (Comms'r Br. 4.) The plaintiffs counter in their response:

---

[5] Neither the plaintiffs nor the defendant make an argument as to the claims against the ADOC Commissioner under the theory of governmental liability. Because the court finds that, on the evidence presented, liability cannot exist as a matter of law, such claims are due to be dismissed.

> Commissioner Campbell's liability is based on his failure to address any concerns that were going on inside the Chambers County Jail. A proper inspection and questioning of Officers/Guards, inmates and especially Jail Administrator Bill Landrum *would have* raised concerns to Commissioner Campbell which *could have* led to further, more detailed inspections which *could have* uncovered the problems inside the jail. Instead, Campbell did not review reports that were generated from county jail inspections; he does not even know what happens to those reports; he simply made a decision to let the County Jails do what they wanted to on their own without support from the ADOC.

(Pls. Resp. 8.) (emphasis added).

Although the ADOC Commissioner's lack of knowledge of and apparent disinterest to his state-mandated duty with respect to county jails is notable, the court finds that the defendant is entitled to judgment as a matter of law. The plaintiffs have not provided any evidence that would support a finding of supervisory liability on the part of the ADOC Commissioner. A causal connection might have been shown if there had been proof that the ADOC Commissioner had knowledge of widespread sexual abuse of inmates. *See Clark v. Evans*, 840 F.2d 876, 885 (11th Cir. 1988) ("The causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so."). But no such proof exists. The reports show that the inspections are conducted by the Engineering Administrative Division of the ADOC, which implies that the ADOC's focal concern is on the *physical* inspection of the jails. The scope of ADOC's inspections is broad yet somewhat superficial; they primarily involve a yes/no checklist review of the physical facilities, conditions of confinement, and other jail characteristics affecting jail security. The reports are silent as to any problems with inmates or staff. Even if the ADOC Commissioner had bothered to read the jail inspection reports, the reports contain nothing that would have put him on notice of the sexual abuse inside the Jail.

The plaintiffs' argument that the ADOC Commissioner *should have* made more detailed inspections is unavailing. The Alabama Supreme Court has held that the ADOC is vested "with extremely broad discretion as to whether and when to conduct the inspections of county jails." *Carpenter v. Tillman*, 948 So. 2d 536, 539 (Ala. 2006). Clearly, under *Carpenter's* reasoning, the ADOC also has broad discretion in determining the scope of the inspections. To the extent that the plaintiffs argue that a more detailed inspection *could have* uncovered the problems in the jail, their conclusion is entirely speculative. Without an affirmative causal connection between the actions or omissions taken by the ADOC Commissioner and the constitutional deprivation, the § 1983 claim fails. *See LaMarca v. Turner*, 995 F.2d 1526, 1538 (11th Cir. 1993).[6]

### 2. Section 1986

"Section 1986 provides a cause of action against anyone who has 'knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having the power to prevent or aid in preventing the commission of the same, neglects or refuses so to do." *Park v. City of Atlanta*, 120 F.3d 1157, 1159 (11th Cir. 1997) (citing 42 U.S.C. § 1986).[7] To prevail on a § 1986 action for neglect to prevent, the plaintiffs must establish the existence of a § 1985(3) conspiracy, that the defendant had knowledge of the conspiracy, that the defendant was in a position to prevent the implementation of the conspiracy, and that the defendant either neglected or refused to prevent it. *Id.* at 1160.

---

[6] Because the court finds that no constitutional violation occurred, it is unnecessary to analyze the ADOC Commissioner's defense of qualified immunity.

[7] Section 1985(3) makes conspiracies to interfere with civil rights illegal. The plaintiffs have alleged such a conspiracy against defendants Landrum, Davidson, and Burton. The § 1985 claim against Spradlin was dismissed.

7

Assuming without deciding the existence of a § 1985(3) conspiracy, the plaintiffs' § 1986 claim against the ADOC Commissioner fails. The plaintiffs specifically argue that he "should be held liable for the failure to prevent Defendant Derrick Burton and inmate Randy Williams from conspiring to commit sexual improprieties they committed against inmates Brooks and Parker and for Bill Landrum's (along with County Investigators and County Employees) cover-up of the rape of Denise Bonner." (Pls.' Resp. 10.) The plaintiffs have failed to present evidence that the ADOC Commissioner had knowledge of any ***conspiracy***. There is no evidence that he had any knowledge of Ms. Bonner's rape and Bill Landrum's and county employees' actions in the wake of that incident. To the extent that the plaintiffs argue that the complaint in this action put the ADOC Commissioner on notice of a conspiracy, this argument is unsuccessful. The original complaint did not state a cause of action for a § 1985(3) conspiracy, let alone specifically name a conspiracy between Derrick Burton and Randy Williams.

Accordingly, because the plaintiffs have not presented evidence in support of all of the elements of their claims, as they must, the ADOC Commissioner's motion for summary judgment is due to be granted.

**B.**     ***Chambers County and Chambers County Commission***

    **1.**     **Section 1983**

At the motion to dismiss stage, the court ruled that § 1983 claims may be maintained against the County under the theory of governmental liability. The ruling was based on the plaintiffs' allegation that constitutional violations occurred because of the jail's physical structure. In its summary judgment motion, the County argues that its only duties with respect to the Jail are to build, maintain, and fund the Jail. The plaintiffs respond only with argument that the claims against the

8

County should survive summary judgment because the County "improperly controlled and maintained" the Jail, (Doc. # 137, Pls.' Resp. 6); however, their argument is wholly unsupported by the evidence.

"Alabama counties possess some duties with respect to county jails," *Turquitt v. Jefferson County*, 137 F.3d at 1289, but counties have no authority to supervise inmates or operate jails:

> The duties of the counties with respect to the jails 'are limited to funding the operation of the jail and to providing facilities to house the jail.' *Stark v. Madison County,* 678 So. 2d 787, 787 (Ala.Civ.App.1996). The county commission is charged with erecting and maintaining jails, and each county is required to maintain a jail of sufficient size and strength to secure the prisoners. Ala.Code §§ 11-14-10, 11-14-13 (1989).

*Id.* at 1289-90; *see also Marsh v. Butler County, Ala.*, 268 F.3d 1014, 1027 (11th Cir. 2001). The Alabama Supreme Court has held that "by using the phrase 'maintain a jail' in § 11-14-10, the Legislature intended to require the county commission to keep a jail and all equipment therein in a state of repair and to preserve it from failure or decline." *Keeton v. Fayette County*, 558 So. 2d 884, 886 (Ala. 1989). Although the chairman of the county commission is authorized "to visit and examine the condition of the jail" without notice to the sheriff or jailer pursuant to § 11-14-22, there is no affirmative duty on the chairman to do so. *See Turquitt*, 137 F.3d at 1290 ("[W]e do not place any significance in the fact that this language could be construed to name the county commission as the body having control over the jail.").

A local government may be held liable under § 1983 only for "acts which the local government has officially sanctioned or ordered." *Id.* at 1287 (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479-80 (1986)). The acts about which the plaintiffs complain relate solely to the operation of the jail and the supervision of employees and inmates: "trusty/inmates were given

far too much responsibility," (Doc. # 137, Pls.' Resp. 4); "improper fraternizing going on between correctional officers and inmates," (*Id*. at 5); "improper key control and lack of maintenance is shown by how guards were able to open up doors and enter cells," (*Id*. at 6); "improper handling of trusty/inmates," (*Id*.); and being able to look though a slot in the door (presumably a tray slot or a food slot) to see into the female pod. (*Id*. at 7.) Because the County has no responsibility for the daily operation of the Jail or the Jail's policies and procedures, the County cannot be held liable under § 1983 for the actions alleged by the plaintiffs.

To the extent the plaintiffs argue that the County failed to fund, build, or maintain the Jail, those duties required by the law, the evidence presented does not support this argument. In fact, Patrick Simms' uncontroverted testimony is that the Jail was professionally designed, engineered, and constructed by experienced firms in 1991. The layout of the Jail was designed with the purpose of separating male and female inmates. All inspections conducted have shown that the physical plant of the Jail is in good operating condition. Nor does the evidence presented show that any action or inaction by the County caused a constitutional violation. Accordingly, the plaintiffs' § 1983 claims against the County are due to be dismissed.

  **2.** **Section 1986**

Plaintiffs argue that the County is liable under § 1986 for neglect to prevent a civil rights violation. As stated above, to prevail on such a claim, the plaintiffs must establish a § 1985(3) conspiracy, knowledge of the conspiracy, that the defendant neglected to prevent the implementation of the conspiracy even though he was in a position to do so. *See Parker,* 120 F.3d at 1160. This claims fails because (1) the plaintiffs have not offered any evidence of the County's had knowledge

of any conspiracy and (2) the County has no authority to intervene in matters relating to jail operation and supervision.  The plaintiffs' § 1986 claim against the County is due to be dismissed.

## V.  CONCLUSION

For the reasons set forth above, it is hereby ORDERED that

1. The Motion for Summary Judgment (Doc. # 106) filed by the ADOC Commissioner Donal Campbell is GRANTED; all claims against him are DISMISSED with prejudice, and he is DISMISSED as a party to this action; and

2. The Motion for Summary Judgment (Doc. # 114) filed by Chambers County and Chambers County Commission is GRANTED; all claims against them are DISMISSED with prejudice, and they are DISMISSED as parties to this action.

DONE this 30th day of April, 2007.

        /s/  W.  Keith Watkins  
        UNITED STATES DISTRICT JUDGE